WILLIAMS, Appellant, *v.* SORENSON et al., Respondents.

(No. 7,747.)

(Submitted January 7, 1938. Decided January 20, 1938.)

[75 Pac. (2d) 784.]

124

Cause submitted on briefs of Counsel.

*Mr. H. O. Vralsted,* for Appellant.

*Mr. John B. Muzzy,* for Respondents.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Defendant Sorenson, as the holder of a judgment against plaintiff upon a claim other than for the necessities of life, caused execution to be issued on March 22, 1933, and delivered to defendant Black, the then sheriff of Judith Basin county. Plaintiff was then the assessor of that county. Black served notice of garnishment upon the county clerk and levied upon a warrant due to plaintiff from the county in the sum of $49.27. The warrant was issued by the county in payment of a claim owing to plaintiff for traveling expenses and board and lodging advanced by him in the performance of his duties as assessor.

Plaintiff filed a claim of exemption under section 9429, Revised Codes. Sorenson filed a bond to prevent the release of the warrant. The warrant was delivered by sheriff Black to Sorenson, who later cashed it.

This action was brought in the justice court for wrongful attachment, garnishment, and conversion, resulting in a judgment for plaintiff. On appeal by defendants to the district court, the judgment there went for defendants on motion for nonsuit at the close of plaintiff's evidence. This appeal followed.

The question before us is whether plaintiff made out a prima facie case of wrongful attachment or garnishment. Whether the attachment or garnishment was lawful depends upon whether the proceeds of the warrant were exempt under section 9429, and, if so, whether the exemption was properly claimed by plaintiff.

Section 9429 provides: "The earnings of the judgment debtor for his personal services rendered at any time within forty-five days next preceding the levy of execution or attachment, when it appears by the debtor's affidavit or otherwise that.such earnings are necessary for the use of his family, supported in whole or in part by his labor, are exempt; but where debts are incurred by any such person or his wife or family for the common necessaries of life, then the one-half of such earnings above mentioned are nevertheless subject to execution, garnishment, and attachment, to satisfy debts so incurred. The words 'his family,' as used herein, are to be construed with the words 'head of family,' as used in section 6969."

Defendants contend that plaintiff's affidavit was not sufficient under the statute to properly claim the exemption. The affidavit of exemption was as follows:

"Otto W. Williams, of lawful age being first duly sworn on oath deposes and says:

"That he is the defendant in the above-entitled cause; that on the 3d day of April, 1933, under an execution issued in the above-entitled cause on the 22nd day of March, 1933, L. E. Black, as sheriff of Judith Basin county, State of Montana, levied upon an account or claim filed by this affiant and defendant against Judith Basin county, Montana, amounting to the sum of $49.27.

"That said claim so filed by this affiant and defendant against Judith Basin county represents the earnings of this affiant and judgment debtor for his personal services rendered within 45 days next preceding the levy of said execution; that this affiant, defendant in said action, is an actual bona fide resident of the State of Montana; and that he is married and the head of a family, consisting of his wife and five children; and that such personal earnings are necessary for the support of himself and his said family; and that the debt or obligation upon which judgment was rendered in the above-entitled cause was not for necessaries for the use of this affiant or any of his said family.

"Wherefore, this affiant, defendant in said action, claims the whole of said personal earnings as exempt from execution or

126

attachment, under the provisions of section 9429 of the Revised Codes of Montana, and demands that the same be immediately released from levy under said exemption.''

Specifically, defendants contend that since the affidavit does not aver that the affiant's family was ''supported in whole or in part by his labor,'' the affidavit is insufficient. It does aver, however, that he is ''the head of a family.'' A ''head of a family'' is defined in section 6969, Revised Codes, as a person who has residing with him and under his care and maintenance his minor child or children. The affidavit then recites that the ''personal earnings are necessary for the support of himself and his said family.'' The affidavit was sufficient in this respect.

It is next contended by defendants that the affidavit merely stated conclusions and is defective on this account. A substantial compliance with the statute is sufficient and technical objections will not defeat an exemption claim. (25 C. J. 135, 136.) ''It is not necessary that the claim shall be in any particular language, unless so required by the statute. If the right to the exemption has been substantially asserted it will not be defeated by formal and technical objections. If the terms and wording of the law are followed in making the claim, it is sufficient.'' (25 C. J. 136.)

Defendants rely upon the case of *Petrich* v. *Francis*, 83 Cal. App. 72, 256 Pac. 444, as establishing his contention that the affidavit, following the language of the statute, amounts to but conclusions of law. We have already said that ''the mere statement that the property is exempt is but a conclusion of law and unavailing'' (*State ex rel. Bartol* v. *Justice of the Peace Court*, 102 Mont. 1, 55 Pac. (2d) 691, 692); but here the affidavit asserted ultimate facts and not conclusions of law. We cannot subscribe to the holding in the *Petrich Case*.

The affidavit was sufficient to make a prima facie case calling for countervailing proof. Had evidence been submitted by plaintiff here which conflicted with the ultimate facts or conclusions set forth in the affidavit, then the testimony and not the affidavit would control. (*Fay Securities Co.* v. *Bowering*, 106 Cal. App.

(Supp.) 771, 288 Pac. 41.) But that was not the situation here. At the trial the testimony of plaintiff supported the affidavit, and there was none in opposition. He testified: "My family and myself were dependent upon my personal earnings and income for support and maintenance during the month of April, 1933." Had defendants desired to cross-examine plaintiff as to the basis for his ultimate facts, they could have done so, but they cannot assert that the affidavit contained mere conclusions. When they proceeded in disregard of the affidavit, they did so at their peril.

Was the warrant exempt in fact? Did the proof show that the sum represented by the warrant was the earnings for personal services rendered within 45 days next preceding the time of the levy? County officers are allowed mileage of 7 cents per mile for distance actually traveled. (Sec. 4884, Rev. Codes.) Of the claim of $49.27, the record shows that $32.97 was for mileage. The balance, or $16.30, was for board and lodging. Actual and necessary traveling expenses are also authorized by statute, subject to a maximum of $50 per month. (Sec. 2038, Id.) The question then is: Is the mileage and traveling expense properly considered as earnings, within the meaning of section 9429?

A commission of 5 per cent. of the cost of constructing a building has been held to be "wages or hire," within the meaning of an exemption statute. (*Moore* v. *Heaney*, 14 Md. 558.) And an allowance to a sales manager of a corporation, of $50 per month for traveling expenses, has been held to be a part of his "wages, salary or hire," within the meaning of an exemption statute. (*Shriver* v. *Carlin & Fulton Co.*, 155 Md. 51, 141 Atl. 434, 438, 58 A. L. R. 767.) The court in the last-cited case said: "These three words, 'wages,' 'salary,' and 'hire' although varying perhaps in their scope, nevertheless express one idea common to them all—compensation for personal services of some kind. And when thus used and applied to the facts of this case it is impossible to escape the conclusion that they include the allowance of $50 per month to Fulton for his traveling expenses. It certainly was not a gift, nor was it made to satisfy any obli-

gation due Fulton by the corporation other than for services rendered by him to it. The nature of his services was such as to require certain expenditures for transportation and subsistence without which the services could not have been rendered. If the arrangement had been to pay Fulton $3,600 a year for his services, upon an express agreement that he was to receive nothing in addition to that sum for any expenses incurred in performing those services, it is not easy to see how that allowance could be regarded as anything but compensation for his services. If instead of paying him $3,600 a year to cover his own labor and the expense incident to the service, it had allowed him a commission, the commission would have been regarded as wages, even though Fulton had been obliged to pay out part of it to cover expenses necessarily incurred in earning the commission.''

Where an employee receives a certain salary and his board, the ''board'' is considered as part of his ''earnings.'' (*Burns* v. *Maurer*, 72 Misc. 481, 131 N. Y. Supp. 344.)

In *Marioneaux* v. *Cutler*, 32 Utah, 475, 91 Pac. 355, 359, the court, in discussing the question whether a statute fixing the salary of judges of the district court and providing that no mileage or expenses should be allowed, dealt with more than one subject, held that it did not, and said: ''It will be seen that the term 'salary' may be and is variously applied. It is usually used as designating recompense, reward, or compensation for services rendered. Mileage may become a part of compensation. If the mileage allowance is limited to the amount actually expended in traveling, then it cannot, of course, add anything to the income of the recipient of the salary. But, if the mileage is not so limited, as where a certain amount is allowed for each mile traveled and this amount exceeds the actual mileage charged, then the balance above such charge becomes a part of the official income or compensation the same as though it were a part of the salary. As a concrete proposition, it is not controlling that such accretions to official compensation are not designated as salary. It is not unusual, as is generally known, to allow large mileage to eke out the compensation of officers. It can make no

difference in principle, however, whether the mileage allowance be much or little above the actual charge, so long as it is not limited to the actual cost of mileage, but is fixed by a round sum per mile. In such event the portion of unexpended mileage may be added to the compensation, and hence may be intended as a part of the compensation.''

Defendants rely upon the last-cited case and assert that, since the evidence does not show that any part of the claim of $49.27 was in excess of actual expenses, no part of it can be treated as earnings.

In the later case of *Higgins* v. *Glenn,* 65 Utah, 406, 237 Pac. 513, 514, the supreme court of Utah held that it was not competent for the legislature to change the mileage or expense of a public officer during his term of office, because such a change affects the compensation and salary of the officer within the meaning of the Utah Constitution, which in effect provides that such compensation or salary shall not be diminished or increased during his term. The court in that case said: ''Any legislative enactment granting mileage or other items of expense to the incumbent of a public office must of necessity be evidence of the legislative intent that such mileage or expense shall be a part of the compensation for the services to be rendered by such officer.''

The reasoning of the court in the *Marioneaux Case* supports defendants' contention, but we think other cases cited announce the better view, and that the entire expense account of an officer constitutes a part of his earnings. In other words, if instead of allowing traveling expenses the legislature had increased the salary of the officer by $50 per month, he to pay his own traveling expense, we think the entire salary would be exempt under section 9429, if the other conditions of that section are made to appear. In reaching this conclusion we have not lost sight of the fact that the term ''earnings'' is more comprehensive than the term ''wages'' and ''salary.'' (*Dayton* v. *Ewart,* 28 Mont. 153, 72 Pac. 420, 98 Am. St. Rep. 549.) In allowing an officer his traveling expenses while in the performance of his duties away from home, the legislature in effect said that such traveling

expenses constitute a part of his earnings. (Compare *Burns* v. *Maurer,* supra.)

Was it made to appear that the earnings of $49.27 were necessary for the use of the family? The affidavit of exemption asserted that the claim in question "represents the earnings of this affiant and judgment debtor for his personal services rendered within 45 days next preceding the levy of said exccution; * · * * and that such personal earnings are necessary for the support of himself and his said family."

The evidence shows that the expense account was for the month of March, 1933, and payable April 1. Plaintiff testified that, when the garnishment was made, it was "necessary to make other arrangements to meet my obligations which this money would have taken care of. * * * This money to take care of this was paid out of my own salary. The salary was budgeted for other purposes. It was obligations I should have taken care of if it had not happened." He further testified, as above noted, that he and his family were dependent upon his personal earnings for support and maintenance during April, 1933. Was this evidence sufficient to show that the $49.27 was "necessary for the use of his family, supported in whole or in part by his labor," within the meaning of section 9429? We think it was.

We have often held that exemption statutes are to be liberally construed in favor of the exemption claimant. (*McMullen* v. *Shields,* 96 Mont. 191, 29 Pac. (2d) 652, and cases therein cited.) So construing the statute, we first point out that it is not necessary, in order that the wages be exempt, that a showing be made that the earnings are necessary for the support of the family in the purchase of the necessities of life. It is sufficient, as the statute declares, that the earnings "are necessary for the use" of the family. The proof here was sufficient to raise a prima facie case that the earnings were necessary for the use of the family. The word "necessary" does not mean an absolute or indispensable necessity, but reasonable, requisite, and proper. (*State ex rel. Livingston* v. *District Court,* 90 Mont. 191, 300 Pac. 916. See, also, *County of Lancaster* v. *Y. W. C. A.*

*of Lancaster,* 92 Pa. Super. 514, and *Killeen* v. *Barnes-King Dev. Co.,* 46 Mont. 212, 127 Pac. 89.) The use by a public officer, or other person under private employment, of a reasonable sum as a revolving fund to pay his mileage and expenses allowed by law, or by the contract of employment, in carrying out the duties of his office or employment, is for the necessary use of his family, within the meaning of section 9429.

It was error to take the case from the jury by granting defendants' motion for nonsuit.

Plaintiff also contends that the sum here involved is exempt ▮▮▮▮▮▮▮ because of public policy, solely on the ground that the salary and expenses of a public officer cannot be levied upon. This question has been determined adversely to plaintiff's contention in this state. (*Waterbury* v. *Commissioners of Deer Lodge County,* 10 Mont. 515, 26 Pac. 1002, 24 Am. St. Rep. 67.)

Other questions urged in the briefs of counsel require no consideration, as we cannot assume that they will arise upon another trial.

The judgment is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.